**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0547-16T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

      Plaintiff-Respondent,

v.

Z.S.,

      Defendant-Appellant,

and

G.N.,

      Defendant.

_____

IN THE MATTER OF Z.N.,

      A Minor.

_____

Submitted November 2, 2017 — Decided November 13, 2017

Before Judges Haas and Rothstadt.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0463-15.

Joseph E. Krakora, Public Defender, attorney for appellant (Albert M. Afonso, Designated Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Lisa M. Black, Designated Counsel, on the brief).

PER CURIAM

Defendant Z.S.[1] appeals from the Family Part's November 13, 2015 order, following a fact-finding hearing, determining that defendant abused or neglected her infant daughter, Z.N. (Zoe). The trial judge found that defendant caused actual harm to her child as a result of her drug use during pregnancy, which caused the baby to be born with severe withdrawal symptoms, and required the infant to be treated with morphine during an extended, four-week-long hospital stay.[2]

Defendant challenges the trial judge's finding that her conduct constituted abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(b). The Law Guardian supports the judge's finding that the Division of Child Protection and Permanency (Division) met its

---

[1] We use initials and fictitious names to protect the privacy of the family.

[2] This order became appealable as of right after the trial court entered a final order on August 25, 2016, terminating the litigation and permitting the Division to institute a guardianship proceeding.

2                                                      A-0547-16T1

burden of proving abuse or neglect by a preponderance of the evidence. Based upon our review of the record and applicable law, we affirm.

When defendant gave birth at the hospital, she tested positive for benzodiazepines, opiates, and cannabis. Zoe exhibited withdrawal symptoms at birth. The hospital transferred the baby to a Neonatal Intensive Care Unit (NICU) at another hospital for specialized care, and referred the case to the Division. When questioned by a Division caseworker, defendant acknowledged the results of her drug test, but denied using drugs during the pregnancy.

At the fact-finding hearing, the Division called Dr. Zarah Jane Pua, a neonatologist who treated the baby at the NICU, as its only witness. Dr. Pua testified that, at birth, Zoe was having withdrawal symptoms and exhibited signs of Neonatal Abstinence Syndrome, which "is a compilation of clinical symptoms that is exhibited by a newborn who [is] exposed to drugs, specifically [and] especially opiates, while the mom is pregnant." Dr. Pua observed that the baby was "very jittery[,] . . . wasn't eating[,] . . . she wasn't sleeping between her feeds[,] [and] [s]he had some . . . respiratory distress, a little bit of increased respiratory rate." To address Zoe's condition, Dr. Pua treated her with morphine because that drug "decreases side effects" that

A-0547-16T1

babies suffer as they are "withdrawing." The morphine treatment continued from June 3 through June 29, 2015.

Zoe tested positive for marijuana, but not for opiates. Dr. Pua explained that this was not unusual because it is difficult to get an uncontaminated urine sample from an infant. In addition, the testing for opiates occurred the day after Zoe was transferred to the NICU. Dr. Pua opined that, by that time, it was possible that the "[opiates] got passed through the placenta from the mom to the baby and got excreted before we got to get the urine sample."

Defendant did not testify or even appear at the hearing, and her attorney did not call any witnesses.

At the conclusion of the hearing, the trial judge rendered an oral decision, finding that the Division established by a preponderance of the evidence that defendant abused or neglected Zoe by taking drugs during her pregnancy, which caused the baby to be born with severe withdrawal symptoms. This appeal followed.

On appeal, defendant contends the judge erred by concluding that she abused or neglected Zoe. We disagree.

Our review of the trial judge's factual finding of abuse or neglect is limited; we defer to the court's determinations "'when supported by adequate, substantial, credible evidence.'" N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 89

(App. Div. 2008) (quoting <u>Cesare v. Cesare</u>, 154 <u>N.J.</u> 394, 411-12 (1998)). The trial court is best suited to assess credibility, weigh testimony and develop a feel for the case, and we extend special deference to the Family Part's expertise. <u>N.J. Div. of Youth & Family Servs. v. M.C. III</u>, 201 <u>N.J.</u> 328, 342-43 (2010); <u>Cesare</u>, <u>supra</u>, 154 <u>N.J.</u> at 413.

Unless the trial judge's factual findings are "so wide of the mark that a mistake must have been made" they should not be disturbed, even if we would not have made the same decision if we had heard the case in the first instance. <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 <u>N.J.</u> 261, 279 (2007) (internal quotation marks and citation omitted). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision. <u>N.J. Div. of Youth & Family Servs. v. F.M.</u>, 211 <u>N.J.</u> 420, 448-49 (2012).

In pertinent part, <u>N.J.S.A.</u> 9:6-8.21(c)(4)(b) defines an "abused or neglected child" as:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of

excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]

In order to prevail in a proceeding alleging abuse or neglect due to the mother's substance abuse during pregnancy, the Division "must prove present or future harm to a child by a preponderance of the evidence." N.J. Dep't of Youth & Family Servs. v. A.L., 213 N.J. 1, 22 (2013). "[T]he primary question under Title 9 is whether . . . a newborn, 'ha[d] been impaired' or was in 'imminent danger of becoming impaired' as a result of his [or her] mother's failure to exercise a minimum degree of care by unreasonably inflicting harm or allowing a 'substantial risk' of harm to be inflicted." Ibid. (quoting N.J.S.A. 9:6-8.21(c)(4)(b)) (first alteration in original).

As defendant correctly points out, "not every instance of drug use by a parent during pregnancy, standing alone, will substantiate a finding of abuse and neglect in light of the specific language of" N.J.S.A. 9:6-8.21(c)(4)(b). Id. at 23. Indeed, if there is no evidence of actual harm to the newborn, a mother cannot be found to have committed an act of abuse or neglect merely because she ingested drugs while pregnant. Id. at 8.

However, "proof that a child is suffering from withdrawal symptoms at birth [can] establish actual harm." Id. at 22; see also In re Guardianship of K.H.O., 161 N.J. 337, 349 (1999) (noting

that "a child born addicted to drugs and suffering from the symptoms of drug withdrawal as a result of the mother's substance abuse during pregnancy has been harmed by the mother and that harm endangers the child's health and development"). In A.L., the Court noted that "the Division can prove actual harm by showing evidence of respiratory distress, cardiovascular or central nervous system complications, low gestational age at birth, low birth weight, poor feeding patterns, weight loss through an extended hospital stay, lethargy, convulsion, or tremors." A.L., supra, 213 N.J. at 22-23.

Contrary to defendant's argument, the evidence here is much different than in A.L. In A.L., there was no evidence of actual harm to the newborn who, despite testing positive for cocaine at birth, was otherwise born healthy and discharged from the hospital after only two days. Id. at 8. In this case, defendant tested positive for opiates and other drugs and this drug use clearly harmed Zoe. The child was not born healthy and Dr. Pua diagnosed her with Neonatal Abstinence Syndrome. Zoe experienced severe withdrawal symptoms, including tremors, respiratory distress, and problems with eating. The newborn baby had to be hospitalized and treated with morphine for nearly a month.

The present case is also completely distinguishable from N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165 (2014). In

that case, the mother gave birth while she was participating in a methadone program on the advice of her doctor.  Id. at 169-70. Even though the baby suffered from methadone withdrawal, the Court held "a finding of abuse or neglect cannot be sustained based solely on a newborn's enduring methadone withdrawal following a mother's timely participation in a bona fide treatment program prescribed by a licensed healthcare professional to whom she had made full disclosure."  Id. at 185-86.  Here, defendant never claimed that she was participating in any bona fide, physician-approved treatment program when she tested positive for benzodiazepines, opiates, and cannabis when Zoe was born.

Under these circumstances, we are satisfied there was more than sufficient evidence to support the judge's finding that defendant abused or neglected Zoe by ingesting drugs during her pregnancy that caused actual harm to the newborn baby.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0547-16T1